All right, Mr. Swartz, you're up. Good morning. Good morning. There are three areas I want to discuss today, hopefully be of interest to you, and those are the three areas that Disney never talked about. The first and most important one has to do with judicial admissions. As Chief Justice Stewart on the panel in the Kiki case said, factual assertions in the complaint are judicial admissions conclusively binding on the plaintiff. In this case, Disney has judicially admitted that it's not just a mere licensor, it licenses and merchandises. Not only throughout the country, but it has pled that it specifically targets Texas market in this merchandising and licensing of its Disney characters that are protected by its various trademarks and copyrights. I direct the Court specifically to the Wyatt-Track case at the Record Excerpts 23, particularly at 167 paragraph 46, where Disney creates consumer demand for such products and services in Texas. Disney has actively pled this in all four districts throughout the state of Texas. This targeting of Texas has been sufficient in many different situations in order to invoke personal jurisdiction. For example, in the TVS-Tecca case that was from the Texas Supreme Court, the fact that the defamation defendant targeted Texas, relying on conduct of its other parties, indicated that it was continuously and deliberately exploiting Texas. This was also true in the sense of the Keaton v. Hustler Supreme Court case, where a defamatory magazine article defamed a plaintiff in New Hampshire, even though that particular plaintiff was a New York resident. Disney Enterprises directs its trademark infringement to Texas, creating reverse confusion on the part of Texas residents. Particularly, again, back to the pleading that Disney Enterprises filed in the Wyatt-Track case, which is in the Southern District of Texas, at the record excerpt 164 at 4B, that Disney Enterprise engaged in merchandising and licensing, not mere licensing. And this is what DEI has told courts in many jurisdictions, not just in Texas, and that it has admitted that it has efforts to develop these Texas revenues that facilitate this infringement. Disney Enterprise knew that infringing goods would be sold in Texas. And what's interesting is that this issue of judicial admissions is an issue that is only peripherally addressed by Disney and its arguments. And if you look to their brief at page 35, and citing the Payne-Weber case, which really is not on point. In fact, so far as we have been able to find, we've never found any case where a party takes a position that it is a mere licensor when it has judicially admitted throughout the state, not only in the Eastern District of Texas, but elsewhere in the state, that it is a licensor and a merchandiser, so as to invoke personal jurisdiction. Now, aren't you, in your last statement, aren't you confusing the merchandise companies with the licensed companies of the Disney Group? No, sir. The reason that's not confusing the two is that Disney Enterprises pled in different cases in Texas that it is the licensor and the merchandiser. It took that position, which is completely inapposite to what they're saying in this case. They would like this court to believe that it's a mere licensor and that it doesn't have and wash its hands clean from any liability to be sued in Texas. It wants to take the position that, yes, we can sue someone else, we being Disney Enterprises on behalf of the entire Disney franchise, we can sue people in Texas for violating our intellectual property rights, our trademarks, our copyrights, but when we're sued, we're going to mandate that you sue each and every one of these parsed-out Disney companies. And that's the discontinuity between the two. In that statement, though, aren't you confusing the parent company with the subsidiaries who are only, you know, sister-brother related to each other? No, sir, I'm not confusing, and I'm just quoting what Disney says in its own pleadings. This goes back to the statement that I started out with, that factual assertions in the complaint are judicial admissions conclusively binding on the plaintiff. And so, in one instance, Disney Enterprises is claiming it is the licensor and merchandiser, and then, in this particular case, it says, well, we're just a mere licensor. And so there's that discontinuity, and that's at the heart of the fact that they're saying that, well, we don't merchandise in Texas, everybody, our licensees do that. And so, therefore, we have no exposure to being sued in Texas because that's done by someone that we have licensed. And that's the antithesis of what it is saying in its pleadings and has pled throughout the state of Texas. Which corporations do you say said that in the pleadings? Disney Enterprises said that in the pleadings. It's in the record, and it's cited in the brief in multiple places. DEI. Yes, that's correct, DEI. And, particularly, I draw the court's attention to... Not Disney Industries. I'm sorry, sir? You're not talking about Disney Enterprises? Disney Enterprises, yes, sir. Corporation? Yes. You're not talking about the big Disney parent company? Well, that is, in part, it's a confusing web of different companies trying to sort out the different entities that Disney likes to hide behind. It wants to be one entity in the face of Disney Enterprises when it sues. But when it's sued, it wants you to sue every possible different company, and then it tries to escape liability through this web of different companies. As originally pled in the First Amendment complaint in the 070 case, it was against Disney Enterprises as well as the other Disney entities, which could have been as many as 80 different companies. Subsequently, when the Third Amendment complaint was filed, that those 80 companies was pared down to 10 companies where, at least, we had the best evidence that those were involved in these infringing activities that are a part of this case. Well, I'm sorry to ask you mercy, and it is confusing, but to the extent possible, would you please try to be specific about which corporation you're talking about? I will do my best, sir. As it relates particularly to the judicial admissions, Disney Enterprises Inc. is the face of Disney, and that is the one party that represents itself as this entire Disney franchise, this one big entity. Now, one of the other things that Disney did not talk about, and I'll talk about it in the context of Appleese, if you prefer, collectively, is the fact that a number of these dismissed defendants have interactive websites in Texas, and they all refer to Disney.com or some variant of that. For example, Disney Shopping has the internet website ShopDisney.com, interactive website. Buena Vista Home Entertainment is Movies.Disney.com. Disney Interactive, which has Games.Disney.com. Disney Licensed Publications is Books.Disney.com. Walt Disney Records is Music.Disney.com. The Cruise Lines and Parks all use Disney Parks.Disney.go.com. All of these internet websites, they're interactive, and they all present Disney as one entity. They're all, and they're targeted at Texas, and these different entities, even though to joke you citizen, that all looks the same. It's all one big Disney franchise, one big company. In fact, Judge Payne, in his 2017 Godot opinion at Head Note 22, said, There's no meaningful way for customers to determine defendants are separate and apart from their domestic subsidiaries, partly because they identified and advertised themselves interchangeably or as related entities on their websites, thereby making the exercise of specific jurisdiction over them fair and reasonable. Judge Payne held this to the same effect in this case at Record Excerpt 117 in his order denying Disney Enterprises' original motion to dismiss. So we have a situation where we have a judicial admission of unity when Disney Enterprises seeks to enforce its rights in Texas, but there's no unity when charged with liability. So, is there any court held that having a website that is linked to a licensing sibling will make it subject to personal jurisdiction in that case? I don't have a specific case with that fact scenario. There are many cases subjecting companies to personal jurisdiction just by having an interactive website. In this particular case, though, these websites are, they are interactive and they do contribute to the acts of infringement that are complained about. But they're not just an active website on something else. This is part and parcel of what is being claimed by the plaintiff that is part of its case. Particularly the Supreme Court in the Damlar AG case said corporations can purposely avail itself of a form by directing its agents or distributors to take actions there. That was at 571 U.S. 135. On that same page, the Supreme Court also says that agencies come in many sizes and shapes and also direct the court's attention to the New York tax case, which talks about the Disney synergies that date back to the 1920s and draw the court's attention to our identity diagrams as presented by Disney itself. Also I'd like to comment briefly with respect to the sua sponte dismissals. In this particular case, we've had not one, but two sua sponte dismissals of complaints. First we have the retroactive denial of the third amended complaint after substantial discovery and expert reports, which we believe is to be an abuse of discretion. To that end, I would just draw the court's attention to the appellant's first brief at pages 26 and 27, where there were some 23 depositions that were taken after consolidation was granted. The sua sponte dismissal of the third amended complaint in the consolidating case results in the statute of limitations barring recovery that the plaintiff, D.C. Lisa, has against the dismissed defendants, and that under the rulings of this, the Southern Milling case in 1959, which requires a strong showing that dismissal is proper. In this case, there was extreme prejudice to D.C. Lisa, which was exacerbated by the court's 18-month delay in ruling on the propriety of the dismissal of the third amended complaint. Do you, if we were to conclude that there was no personal jurisdiction over the licensing corporation, what would be your remedy for that wrong you just mentioned? There wouldn't be any. It would be a lost cause. I mean, if there's no personal jurisdiction over either the 10 dismissed Disney defendants or the two remaining that the court below found to have no personal jurisdiction over, there would be no remedy. It would be barred by statute of limitations. So, separate and apart from dealing with an issue of the third amended complaint, which was dismissed after a year's worth of extended discovery, which was really compacted into six months, a fourth amended complaint was filed as it related to the remaining two defendants in the second filed case and two defendants as it related in the first filed case. And then that subsequently was stricken by the court, and again, there was a challenge to a part of it, but not the entire, but the court nonetheless struck the entire complaint. And I say I'm out of time. You have some time, Honorable. Thank you, Mr. Swartz. We'll see you back, Honorable. All right. Disney Enterprises. May it please the Court. The central issue on appeal is the personal jurisdiction question with respect to Disney Enterprises, DEI, and Disney Consumer Products, DCP. In urging the district court to exercise jurisdiction over those two entities and asking this court to reverse the district court's ruling below, plaintiff is arguing for a radical departure from fundamental tenets of personal jurisdiction. At base, plaintiff is contending that the Walt Disney Company, which is the ultimate corporate parent and is not a defendant in this case or an appellee, that the Walt Disney Company and every one of its direct and indirect subsidiaries should be treated as a single legal entity, Disney, for jurisdictional purposes, and that the forum contacts of any one of those companies can be imputed to all of the others. Because in plaintiff's words, Disney is everywhere, that would mean that every direct and indirect subsidiary of the Walt Disney Company is subject to jurisdiction anywhere in the country regardless of what contacts that individual defendant itself has with the forum State. That is not the law and that would violate constitutional due process. If Disney, I guess I'm using the term globally, if Disney does something allegedly wrong, does a plaintiff have to file a different suit in a different state for each and every Disney related entity that it believes was part of that wrongdoing? So the answer, it depends in large part on what the alleged wrongdoing is. There may be circumstances, for example, if it's not a licensing situation, but there's actually a manufacturer of goods that invokes a stream of commerce theory of personal jurisdiction, it's possible that a much broader reach of personal jurisdiction would be available if it's available here. But ultimately, even in cases where, for instance, this case we are dealing with a licensee, there is at least one forum where jurisdiction over all of these various Disney subsidiaries, direct or indirect, can be exercised, and that's California. That is the principal place of business for many of the Disney enterprises, many of the Disney companies, subsidiaries or indirect subsidiaries, and it's also a location where there are significant business contacts. So the question isn't is there a forum, a convenient forum where the plaintiff could have gone. This is a New Jersey plaintiff who chose to sue in the eastern district of Texas, 14 Disney entities at one point in the case, actually up to 80, although some were unnamed, virtually all of which had no forum contacts with Texas. Had the plaintiff filed the same case in California, the plaintiff could have proceeded likely against all 80 or 80-plus of the defendants without facing a personal jurisdiction challenge. So the plaintiff doesn't get to pick anywhere it would like to sue all of them, but that doesn't mean that there isn't a location where the plaintiff could conveniently adjudicate rights with respect to all of them. I do want to touch on two of the points that Mr. Schwartz raised. First is the judicial admissions point. So in the record excerpts that the appellant has identified here, there are a number of complaints from other actions that excerpts are appended from. And I'm going to refer to some of the pages of the record excerpts to identify that the allegations are not made with respect to Disney Enterprises, Inc. that Mr. Schwartz suggests they are. On record excerpt 141, Disney is defined as the Walt Disney Company, the parent company, and then the allegation is Defendant Disney, together with its subsidiaries, including Defendant DEI, Defendant DCP, and the defendant other Disney entities, is a diversified worldwide entertainment company that then it goes on to say engages in various activities. On that same page in paragraph 25, a significant aspect of Disney's business is the merchandising and licensing of distinctive elements associated with DEI's motion picture and television programs. So the Disney that's being referred to there is the ultimate parent company and the allegations are with respect to a whole group of the subsidiary and affiliated companies. Same in the complaint that begins on record excerpt 153. On record excerpt 154 of that complaint, DEI is a plaintiff and it says DEI is a subsidiary of the Walt Disney Company, quote Disney. Disney, together with its subsidiaries, is a diversified worldwide entertainment company with operations in five business segments. And then on the next page in paragraph, subparagraph C, a significant aspect of Disney's business is the merchandising and licensing of distinctive elements associated with DEI's motion picture and television programs. Record excerpt 160. This is the one that I believe the, well, one of the ones that appellant was focusing on. Plaintiff Disney Enterprises, Inc., which in this case, in this complaint is defined as Disney, says among other things, Disney or one or other of its subsidiaries is engaged in the production, acquisition, and distribution of motion pictures for theatrical flashbooks, a vision, home entertainment, and other forms of distribution. So again, the reference to the activities is with respect to the group of companies generally. Record excerpt 163, another complaint, paragraph 4A. Disney or one of its affiliated companies, again, Disney there is DEI, but Disney or one of its affiliated companies is engaged in a variety of businesses, including without limitation. And it goes on with a list of activities, including selling books, computer software,  JUSTICE SCALIA. Sir, before you get, I don't know how many you are going to point out to us, but would you save some time so we can discuss one or two in detail and give us your argument on that? JUSTICE BREYER.  And that, in fact, is the last of them. JUSTICE SCALIA. Okay. JUSTICE BREYER. Okay. With respect to, with respect to, so none of the judicial admissions that are pointed to are actually say anything about DEI engaging in anything other than as a, as a licensor. And in fact, use of the term merchandiser and licensor, a merchandiser is nothing other than a licensor for movie-related merchandise. So that doesn't, a merchandiser doesn't mean it's actually the person that's manufacturing goods that's actually selling goods to consumers. It's the vehicle by which motion picture properties are licensed so that goods can be created and sold. The evidence of what DEI actually does that's in the record is in the Reed Declaration, which is in the 17-41268 case at record 302 to 303. The Reed Declaration specifies exactly what it is that DEI and DCP do. And what Ms. Reed declares, and there's no evidence to the contrary in the record, is that DEI is a licensor and DEI, neither DEI nor DCP for that matter, sell any goods in Texas, including goods based on Lotso or other Toy Story 3 characters. So there is no evidence in the record by way of judicial admission or otherwise that DEI or DCP are themselves engaging in any activities in Texas. That then comes to the point that the whole case for personal jurisdiction depends on either the non-exclusive licenses that DEI and DCP grant to third parties being sufficient to give rise to personal jurisdiction in Texas, or the contacts of some other Walt Disney Company subsidiary being imputed to DEI or DCP. On the first, with respect to non-exclusive licenses, the uniform jurisdiction across various circuits, including the Fifth Circuit, is that a bare license alone without, quote, something more, will not support the exercise of jurisdiction. What is the something more? The Breckenridge case gives a good example of what would be something more if the licensor is actually exercising day-to-day control over the licensing, sales, and marketing activities. If it's telling the licensee where to sell, what quantities to ship, how to market the goods, what advertising to do, and where to direct the advertising, that could be something more. There's no evidence in the record whatsoever of anything along those lines or anything that would constitute something more.  There is not. And with respect to, on the website point, I think it's important to note that we're dealing with consumer-facing websites that talk about various Disney companies as a common Disney. This Court, in an opinion that was authored by Chief Judge Stewart, in the Freudensprung case, and I'll quote from it, said, Although Freudensprung insists that WWAI is indistinguishable from Wilbrow's company, he only offers as evidence various printouts from websites, primarily SEC filings related to the Wilbrow's entities, which are collectively referred to in those companies as, quote, the company, end quote. While such documents might arguably establish the existence of some corporate relationship between WWAI and the other Wilbrow's entities, they are insufficient to overcome the presumption of corporate separateness. We have the same thing here. We have websites that are pointed to that refer to the Walt Disney Company and various subsidiaries colloquially as Disney, but that in and of itself doesn't even come close to what's needed to create an alter ego, a prima facie showing, let alone to prove an alter ego relationship, which is what's necessary to disregard the corporate form in the way that plaintiff argues this Court should do. The only something more that the appellant identifies here is that there's quality control exercised by DEI with respect to the intellectual property rights that are being licensed. But as this Court is aware, quality control is essential to any trademark license. If the licensor doesn't exercise quality control, the trademark's abandoned. So to argue that quality control is something more would swallow the rule and essentially would mean that a licensor is subject to jurisdiction everywhere, and that has therefore been rejected, including by a district court in this circuit in the Sunshine, the Sunshine Kids case. The extraordinary breadth of the appellant's argument here really was captured in an exchange between Mr. Schwartz and Judge Schrader on November 30, 2017, in the hearing that resulted in the opinion that's being appealed here. The Court asked Mr. Schwartz, quote, it seems to me it really boils down to this. Whether a license to third parties to sell products throughout the country supports specific jurisdiction in the Eastern District of Texas. Do you agree with me that is the issue? Mr. Schwartz, I believe it is, Your Honor. The Court, okay, your argument that it does, let's assume you are correct. Your argument that it does results in a situation where Disney could be sued anywhere in the country for merely being a licensor. Would it not? Mr. Schwartz, that is true. That is what the appellant's argument here ultimately would require, that without an license, third parties to manufacture and sell merchandise nationwide, including in Texas, means they are subject to personal jurisdiction nationwide. That's not what constitutional due process allows. With respect to the imputation argument, there's a lot in appellant's papers in their briefs and then in Mr. Schwartz's argument today about a single business enterprise. Both the Fifth Circuit and the Supreme Court of Texas have rejected the single business enterprise rule as a basis for exercising personal jurisdiction. The Texas Supreme Court decision in PHC Minden is an especially good example where in that case, the parent company and the subsidiaries and affiliates had a shared business purpose. The parent company articulated the general business policies for all of the subsidiaries. The parent company monitored the subsidiaries' performance, supervised its finance and capital budget decisions, and was otherwise involved in the policies and procedures of the subsidiaries. And the Texas Supreme Court in that case said that's what a parent company does. Absent some specific control over day-to-day operations, being really involved in the day-to-day management of the company, that is not enough to disregard the corporate form. The Fifth Circuit, this Court held similarly in Freud and Sprung and in the Special Industries case. There hasn't even been an allegation of alter ego in this case. None of the complaints, first, second, third, fourth, none of them allege, even allege the existence of an alter ego relationship between the companies. There certainly is no, after two years of discovery, there's no, not a shred of evidence in the record that would support an alter ego showing. The last point that the appellant raises as a grounds for personal jurisdiction is agency. This actually is not argued in the opening brief on appeal, and this was not argued in the district court. It's argued for the first time in the reply brief. Therefore, the argument has been waived. But even if it hadn't, Mr. Schwartz quoted a non-Fifth Circuit, non-Texas case for the proposition that basically agency is this mushy concept and almost anything can constitute an agency relationship. But under Texas law, which would be the State law that governs the definition of a principal-agent relationship in this case, agency requires two things, proof that the principal has the right to assign the agent the specific tasks that the agent engages in, and second, and most importantly, controls the means and details of the process by which the agent will accomplish the task. That standard is quoted in the Sunshine Kids case and also numerous cases from this Court. Simply having a synergistic relationship among various subsidiary and affiliated companies is not enough. That doesn't create an agency. There's not a shred of evidence in the record that DEI or DCP had any involvement in the means or details of the process by which Disney Shopping or Disney Store sold goods in Texas or anywhere else. There's no evidence that they directed Disney Store and Disney Shopping to make sales in Texas or had any involvement in how it was done. So for personal jurisdiction, we know that DEI and DCP did not themselves engage in any business within or directed at Texas, and that the forum contacts of the two defendants that are subject to jurisdiction in Texas, Disney Store and Disney Shopping, cannot be imputed to their corporate affiliates. Therefore, the district court did not err in dismissing DEI and DCP for lack of personal jurisdiction. With respect to the issues on the third and fourth amended complaint that Mr. Schwartz raised, in the first instance, because we don't have a dismissal of all claims as to all parties in this case, we have a case that is going to go to trial against two of the originally named defendants. The vacating granting of leave to file the third amended complaint and the motion to strike, granting the motion to strike the fourth amended complaint are interlocutory issues. They're not right for appeal at this point. They can be appealed from the ultimate final judgment in the case, but we don't have a final judgment here yet. In any event, if the Court — if this Court were to look at those issues, the vacating of leave to file the third amended complaint, this isn't a case like the Southern Mill case that Mr. Schwartz cited. In the Southern Mill case, the Court had Federal question jurisdiction over the primary claims in that case, and there was a third amended complaint that had been filed under the Court's supplemental jurisdiction. The Court granted summary judgment on the primary claims and then said for no reason other than it wasn't required to exercise supplemental jurisdiction in the absence of the primary claim, I'm going to dismiss the third amended complaint that did not have a separate basis for Federal jurisdiction. There was no analysis of judicial economy, no analysis of any of the factors that would go into exercising discretion. It simply was not required to exercise jurisdiction, therefore not going to. In this case, we have a detailed identification by Magistrate Judge Payne and then ultimately by Judge Schrader of the reasons that the third amended complaint that they believed leave was being granted to file turned into something completely different than what the plaintiff had represented at the time it sought leave to file that complaint. There really was a bait-and-switch here. Kennedy, what do you do with his pushback on that to say that the effect of that the statute of limitations is a major prejudicial? So to the extent the statute of limitations is a bar, and I'm just going to pause for one second to note that trademark infringement is a continuing tort. So the plaintiff, and I don't mean to be handing the plaintiff arguments to pursue here, but the plaintiff may have lost a period of damages that the plaintiff can sue for, but if the plaintiff believes it has claims against DER or DCP for trademark infringement, they can still reach back 4 years. So it's not as though a claim of infringement has been forever waived. But even with respect to the periods for which a damages recovery may no longer be available, that's purely of their own, of plaintiff's own creation. Plaintiff knew how to request a tolling agreement had they wanted to. They requested two of them in this case. The defendants had granted tolling agreements in the first instance. One went from December of 2012 to December of 2013. That's at pages 94 to 98 of the record in 41271, and a subsequent one from December 2012 to June of 2015. They could also have filed a new complaint in Texas, in California, or wherever they wanted, the very day after the district court declined to maintain the Third Amendment complaint. If they had filed a new complaint the next day, they wouldn't be facing any statute of limitations problems. They chose not to. They still haven't. So they're in a situation where, to the extent they've lost any damages periods, it's a problem of their own making, and they certainly have not lost the ability to assert a claim. Sotomayor, do you think that the contention that there's something fair or unwrong because they will have no remedy, even though we think maybe the district court erred in its action? What is your response to that? To the extent there is no remedy, and we believe there actually is a remedy because of the continuing tort, but to the extent that they have no remedy, it's not because the district court vacated leave to file the Third Amendment complaint. It's because from December of 2015, which is when the district court did that, through now, November of 2018, three years later, they haven't refiled. Plaintiff didn't file a new case either in Texas, in California, or anywhere else. So to the extent a statute of limitations has run on any damages periods, it's run because plaintiff has not done anything since the Third Amendment complaint was vacated, not by virtue of the complaint itself having been vacated. Thank you. Thank you. Thank you. Back to you, Mr. Swartz. With respect to the record excerpts that counsel targeted, I'd like to go back to the record excerpt at page 162. On the face of this pleading that was filed in Houston, it says plaintiffs, and the first name plaintiff is Disney Enterprises, Inc., quote, Disney, in quotes. And then counsel read about Disney or one of its affiliated companies. Now, if Disney or one of its affiliated companies was sued by a defendant in that manner, would they have sued it? Of course not. They want to be able to lump all of its judicial horsepower in the context of Disney Enterprises as the enforcement arm of Disney. But when it gets sued, it's like cutting through the layers of an onion. You have to pull apart each piece of the layer to find out who's the proper party to go after. Counsel made a comment or read into the record a brief excerpt that was taken in the context of the hearing before the court and suggests that while it appears to be succinct, there really is a lot more to that dialogue, that it's not as simple as just because there is a non-exclusive license that subjects a company to jurisdiction throughout the country. This is the case where Disney Enterprises has used the Texas courts to enforce its IP, particularly its trademarks, particularly its copyrights, particularly things that have to do with Toy Story 3. And the fact that it does that actively in the state and uses those resources as its judicial enforcement of its intellectual property rights seems to violate a fairness principle that if you can enforce your rights in Texas, then the converse ought to be true also, that you should stay there and defend when you have been sued. As to the amended complaint situation, I directed the court to the record excerpts on page 136 where it gives a somewhat abbreviated history but helps set the context of where there is a first and second amended complaint in the first filed case and a first amended complaint in the second filed case, then there was the consolidation, a third amended complaint in the consolidated case, and a fourth amended complaint in the consolidated case. I say I'm out of time. Thank you very much. Any questions? Do you have a short ending sentence you were about to utter? I would ask the Chief to allow you to utter it. Well, it's just that it's a complex procedural history that has happened as a result of the consolidation and the deconsolidation and that the first amended complaint, which is the last act of completing in the second filed case, was the one against Disney Enterprises and Disney Consumer Products as well as other Disney entities, and that was joined into the consolidated case. Counsel argues that that case is not final. We say it is because Disney Enterprises, Disney Consumer Products, was never in the first filed case as of the time of the second amended complaint. And so dismissing those two parties for lack of jurisdiction as well as the ten other Disney defendants effectively terminates the 070 case and terminates the plaintiff's rights against those entities. Thank you. All right. Thank you to both counsel. This concludes the argued cases for this panel for this week. They will be submitted along with the non-only argued cases. That said, it concludes our work and the panel stands adjourned.